IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CASE NO. 1:12-CR-00238 |
| | ) | |
| Plaintiff | ) | JUDGE DAVID D. DOWD, JR. |
| | ) | |
| -vs- | ) | **MOTION BY DEFENDANT CONNOR** |
| | ) | **STEVENS TO SUPPRESS POST** |
| DOUGLAS WRIGHT, et al. | ) | **ARREST STATEMENTS** |
| | ) | |
| Defendants | ) | **(HEARING REQUESTED)** |
| | ) | |
| | ) | |

**INTRODUCTION**

Defendant, Connor Stevens, is one of five individuals indicted for three counts involving various federal offenses alleging a conspiracy to bomb a bridge in the Cleveland area. After his arrest late evening on April 30, 2012, he was interrogated by FBI agents over the course of four hours into the following morning. During the interrogation, Defendant made some incriminating statements. Defendant now moves to suppress the statements due to a violation of his right against self-incrimination and right to counsel under the Fifth and Sixth Amendments to the United States Constitution pursuant to Miranda v. Arizona, 384 U.S. 436 (1966) and other authority. As will be further discussed herein, the Defendant alleges that notwithstanding the signing of an advice of rights form waiving his right of self-incrimination, he subsequently attempted to invoke his right to

counsel, and to stop the interrogation, efforts which were ignored by the agents who proceeded to continue the interrogation. In addition, the Defendant repeatedly asserted he was in no condition to respond to questioning due to his physical and mental condition, lack of sleep, and the earlier use of alcohol, yet the agents continued to press him to respond, thereby rendering any waiver of the privilege invalid or involuntary.

## FACTUAL BACKGROUND

After the arrest of the five Co-Defendants on April 30, 2012, Connor Stevens was separately booked and taken to a room where he was met by approximately five FBI agents shortly before midnight. He was introduced to Special Agent Jared Ruddy who conducted the interrogation. A conversation went on for about 15 minutes before the subject of rights was mentioned. Yet during those 15 minutes, Agent Ruddy made comments such as " You know we got some things to cover," (preliminary transcript page 4, 1D1 session 2), "obviously there's . . . ah . . . some things we need to discuss, alright"?, (p. 9), "the more that we can have . . . ya know . . . an open and compete discussion about . . . ya know . . . recent events the better off things are gonna be." (p. 10). He further states to Defendant "you have some good opportunities right now . . . I think that you'll be very . . . ah . . . pleased with their outcome." (p. 10).[1]

After telling Defendant that he needs to talk about recent events relative to the case, the Agent finally brings up the issue of Miranda warnings. Agent Ruddy does not read or explain the rights, but has the Defendant read out loud the advice of rights form. As he is

---

[1] Counsel obtained these excerpts from preliminary Government transcripts of the interrogation which was recorded. Counsel will provide the full transcript for the record upon request.

reading the form, Mr. Stevens indicates "you've already begun asking me questions." (p.13).

Mr. Stevens then reads the last statement on the form where it refers to being willing to answer questions, he states " whoa whoa whoa whoa . . . now you're . . . now you're putting words in my mouth. I am not necessarily willing to answer questions without a lawyer present." (p. 15).  But rather than ceasing the interrogation, Ruddy attempts to backtrack and does mention that Mr. Stevens has the option of stopping the interview, but qualifies this by immediately stating that "But for us to get down the road, we have to have . . . ya know . . . ability to discuss some matters with you." Mr. Stevens then says "I wanna go to bed" (p. 16) but rather than insure that Mr. Stevens is willing to continue after clearly expressing his desire for a lawyer or go to sleep, Agent Ruddy immediately proceeds to substantive areas of questioning.

Thereafter, Mr. Stevens continues to state his desire not to continue with the interview with the following references:

> "I don't want to . . . I don't even wanna talk about that shit right now to be honest." (session 3, p. 13)
>
> "I don't want to incriminate anybody else or myself."(session 3, p.13)
>
> "I'm not in any condition to talk about this shit right now."  I'm exhausted.  And I'm lost.  And I'm cold.  And I'm tired. And I'm lonely. And I'm fuckin . . .not in a good state." (session 3, p. 11).

Despite these protestations by the Defendant to stop the interview, the interrogation pressed on for hours more, eliciting various incriminating statements. Not once did the Agent honor Mr. Stevens' efforts to discontinue the interrogation or even follow up with any clarification of the objections raised by Mr. Stevens.  Moreover, the practice of compelling

cooperation by suggesting he needs to talk to the Government - prior to giving the Miranda warnings - renders the warnings themself ineffective and any formal waiver open to challenge.

## **LEGAL ANALYSIS**

The historic case of Miranda, supra, pronounced the fundamental ground rules relating to the use of in custody statements pursuant to law enforcement interrogations. The core principle is that prior to questioning, police must warn an individual that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.

Once informed of these rights, the individual may choose to speak with police, but the Government, in the context of a suppression motion, must demonstrate that he waived his privilege against self-incrimination and the right to counsel under high standards of proof set for the waiver of constitutional rights. This requires proof that the individual relinquished his rights voluntarily—as a product of a free and deliberate choice rather than intimidation, coercion, or deception—and knowingly—with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

One of the hallmarks of Miranda, supra, is that it requires the police to scrupulously honor a decision to either assert the right to remain silent or the right to the presence of counsel.  If the individual indicates "in any manner" at any time that he wishes to remain silent, the interrogation - or any actions on the part of the police that are likely to elicit an incriminating response - must cease.

Looking at the totality of the circumstances related to the long interrogation of Mr. Stevens, it is clear that during the advice of rights process, Mr. Stevens either wanted

4

to have a lawyer present or wanted to have the interrogation ceased.  In Edwards v. Arizona, 451 U.S. 477 (1981), once an individual invokes his right to have counsel present, a valid waiver cannot be established by showing that he responded to further police-initiated interrogation.  After Stevens expressed his right to counsel, the interrogation should have ceased pending appointment or opportunity to obtain counsel. But Agent Ruddy only reminded Stevens that he had the option of stopping the interrogation in the future, rather than honoring the request at that moment. Agent Ruddy coupled such impermissible response to Mr. Stevens' desire for counsel with a comment that he needed the "ability to discuss some matters with you."  Minimally this is a confusing or mixed message. On one hand, the right to a lawyer or to stop the interrogation is formulaically stated.  On the other hand, when those rights are raised, the agent is not so subtly asserting law enforcement authority to compel incrimination.

In essence, not only did Agent Ruddy ignore the invocation of the right to counsel, but reinforced the notion that Mr. Stevens needed to provide information to the Government.  It should be noted further that contrary to Edwards, at 484-485, Mr. Stevens did not "initiate further communication, exchanges, or conversations with the police." The Government was determined, regardless of Mr. Steven's expressed wishes, to continue the interrogation. Also, the Government cannot demonstrate that Mr. Stevens voluntarily waived the right, because he did not "reopen the dialogue with the authorities." Id. at 486, n.9.  This is unacceptable and by itself, a violation of the right to counsel.

The Government might argue that by signing the advice of rights form, which purports to waive the privilege, the matter of waiver is put to rest.  However, the relinquishment of a known right or privilege depends "upon the particular facts and

5

circumstances surrounding that case, including the background, experience, and the conduct of the accused." Johnson v. Zerbst, 304 U.S. 458, 464 (1938).  See also Garner v. Mitchell, 502 F.3rd 394 (6th Cir. 2007).  In Moran v. Burbine, 475 U.S. 412 (1986), the Supreme Court stated that the totality of the circumstances must be examined to determine whether the choice was knowingly, voluntarily, and intelligent.

As will be developed at a hearing on this Motion, Mr. Stevens was in a room with five FBI agents. He was handcuffed for some time. He was wearing wet clothes after lying in the mud face down when arrested.  He was extremely tired and sleepy.  He had been drinking that night. He continued to tell his captors that he was not in a condition to be questioned.  All these circumstances, along with the coercive tactics, the invalid waiver, the effort to invoke the right to a lawyer, and to stop questioning warrant a close examination as to whether the Fifth Amendment to the United States Constitution was violated.

## **CONCLUSION**

It is Defendant's contention, for the above reasons, that the interrogation conducted by the FBI violated the Fifth and Sixth Amendments to the United States Constitution. Accordingly, the remedy is suppression of any and all statements derived from such violations.  The Court is urged to grant a suppression hearing to more fully develop the issue.

        Respectfully submitted,

        FRIEDMAN & GILBERT


        s/ Terry H. Gilbert
        TERRY H. GILBERT (0021948)
        Attorney for Defendant Connor Stevens
        1370 Ontario Street, Suite 600
        Cleveland, OH 44113-1752
        Telephone:  (216) 241-1430
        Facsimile:   (216) 621-0427
        E-Mail:      tgilbert@f-glaw.com


## **CERTIFICATE OF SERVICE**

I hereby certify that on June 29, 2012, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.


        s/ Terry H. Gilbert
        TERRY H. GILBERT
        Attorney for Defendant Connor Stevens