DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | CASE NO. 1:12 CR 238 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| Connor C. Stevens, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

I. Introduction

Counsel for the defendant Connor Stevens has moved the Court to suppress the post-arrest statement of the defendant on the basis that the taking of the statement violated the teachings of *Miranda v. Arizona*. Counsel for the defendant also contends that his statement should be suppressed as not voluntary.

The Court conducted an evidentiary hearing on Monday, August 6, 2012.

Post-hearing briefs have now been filed. *See* ECF 131, 132.

II. The Nature of the Evidentiary Hearing

The first step in the evidentiary hearing was the playing of government's Exhibit 1 based on the proposition that the compact disc identified as government's Exhibit 1 established the Advice of Rights proceedings.

Counsel for the government also had entered as government's Exhibit 2 a CD that contained a number of audio-video sessions of the defendant Connor Stevens. As a part of the

(1:12 CR 238)

evidentiary hearing, counsel for the government requested that with respect to government's Exhibit 2, session number 2 be played with a time stamp of 07:21:20.

A transcript of the proceedings with respect to the evidentiary hearing related to the motion to suppress filed by Connor Stevens has been filed with the Court. *See* ECF 125.

At the outset of the evidentiary hearing, counsel for the defendant Stevens declared:

> MR. GILBERT: Judge, we intend to play at least 15, 20 minutes of the interview. It goes on for four hours. I don't think you need to hear that.  <u>But the relevant portions regarding my motion with respect to the voluntariness and the right to counsel, that is in the beginning part and I don't think it's burdensome for the court to at least hear the exchange between the defendant and agents.</u> (Emphasis added.)

### III.  Pre-*Miranda* Statements by the FBI Agents

Initially, FBI Agent Ruddy advised the defendant as follows:

> ... <u>You know we got some things we need to cover</u>.  Ya know? We'll get through it though.  Okay?  <u>Nothing to worry about</u>. <u>We'll, ah, discuss everything, openly, willingly, freely</u>.  Um, very cooperative.  Okay?  Go over some things that we need to tell you and the, ah, <u>let's have an open discussion</u>.  All right?  But let's first try to get – making sure you're comfortable.  We're gonna see if we can get some dry clothes or at least a blanket that might be dry. (Emphasis added.)

Later and prior to advising Connor Stevens of his Miranda rights, FBI Agent advised the defendant as follows:

> RUDDY: Okay.  All right.  Like I said earlier, my name is, ah, Jake Ruddy.  Okay?  I'm an agent here with the FBI and this is a colleague of mine.  Ah, we work together quite frequently.  That's Jon Dean.  Okay?  <u>Obviously there's, ah, some things we need to discuss, all right?</u>  Um, first, wanna let you know that, ah, interview is recorded.  Okay?

2

(1:12 CR 238)

>CONNOR: I see. (Laughing).
>
>RUDDY: All right. So, ah, ya know, that – that being said, ah, the more that we can have, ya know, an open and complete discussion about, ya know, recent events, <u>the better off things are gonna be.</u> Okay? We're not here to make any judgments. That's not out of place in life. Ah, we don't do that at all. (Emphasis added.)
>
>All we do here is talk about events and, ah, and – <u>and try to do the best we can help people out.</u> (Emphasis added.)

Continuing, FBI Agent Ruddy advised the defendant as follows:

>... you have some good opportunities right now. All right. And so you – if you make good decisions along the way, um, ya know, those opportunities, <u>I think that you'll be very, ah, pleased with their outcome</u>. (Emphasis added.)

### IV. <u>The Commencement of the *Miranda* Warning By FBI Agent Ruddy</u>

After engaging in the pre-*Miranda* statements above described, and apparently 14 minutes after the interview of Connor began, for the first time Officer Ruddy initiated the process of advising Connor Stevens of his *Miranda* rights in the following colloquy:

>Now, before we really kinda get into, ya know, what – what's transpired over recent events, um, I need to just kinda tell you a few things so that you're aware of them. Okay? What I'd like you to do, while I do this, is I'd like you to – to read along, and I'm gonna give ya my book. Okay?
>
>And as we discuss some things, I want you to tell me whether or not you understand, and then if you have any questions, we'll address that. Okay?
>
>And, then if you understand, I'm just gonna ask you to put your initials next to what we just discussed. Okay? All right, Connor. I'm gonna give you a pen. All right?

(1:12 CR 238)

> ...
>
> RUDDY: Kinda focus on this.  All right?  What this is, right here, Connor, is just advice of rights.

The balance of the Advice of Rights in the context of *Miranda* is attached hereto as Appendix I and consisting of pages 17 through 22.  ECF 125.

As indicated in the testimony in Appendix 1, the defendant Connor Stevens initialed and signed government's motion Exhibit 1, a copy of which is attached hereto as Appendix II

### V.  The recorded indications by the defendant Connor Stevens that he was reluctant to continue with the interrogation

The following statements appear in the record:

> CONNOR: It's just to be honest, I just don't feel like talking right now.  I just wanna go to sleep.
>
> RUDDY: Well --
>
> CONNOR: And forget about everything.
>
> RUDDY: Well, we definitely understand that.
>
> CONNOR: No.  I'm no martyr.  I'm not striving towards that type of (UI) – honestly, it was – I mean it, I don't know what you're (UI) – I'm not – I'm not in any condition to talk about this shit right now.
>
> RUDDY: Why do you feel that way?
>
> CONNOR: Because I'm exhausted. . And I'm lost.  And I'm cold, and I'm tired.  And I'm lonely.  And I'm fuckin' not in a good state.
>
> RUDDY: So what do you think?  We gotta start somewhere.  Let's talk about --

4

(1:12 CR 238)

> CONNOR: I don't want to incriminate anybody else or myself. Plain and simple.
>
> CONNOR: I pick up what you're putting down, but I'm saying, I don't – I don't want to – I don't even wanna talk about that shit right now to be honest.

### VI.  Discussion of Applicable Law

A.  <u>The current law with respect to establish a waiver of the *Miranda* rights</u>

Justice Kennedy writing for the Supreme Court in *Berghuis v. Thompkins*, 130 S.Ct. 2250, 2264 (2010) declared:

> In order for an accused's statement to be admissible at trial, police must have given the accused a *Miranda* warning.  See *Miranda*, 384 U.S., at 471, 86 S.Ct. 1602.  <u>If that condition is established, the court can proceed to consider whether there has been an express or implied waiver of *Miranda* rights</u>. *Id.* at 476, 86 S.Ct. 1602.  In making its ruling on the admissibility of a statement made during custodial questioning, the trial court, of course, <u>considers whether there is evidence to support the conclusion that, from the whole course of questioning, an express or implied waiver has been established.</u>   (Emphasis added.)

In so declaring, Justice Kennedy further observed:

> In sum, a suspect who has received and understood the *Miranda* warnings, and has not invoked his *Miranda* rights, waives the right to remain silent by making an uncoerced statement to the police.  <u>Thompkins did not invoke his right to remain silent and stop the questioning.  Understanding his rights in full, he waived his right to remain silent by making a voluntary statement to the police.</u>  (Emphasis added.)

In an earlier decision in *North Carolina v. Butler*, 441 U.S. 369, 373 (1979), Justice Stewart declared:

> An express written or oral statement of waiver of the right to

(1:12 CR 238)

> remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case. As was unequivocally said in *Miranda*, mere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; <u>but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated</u>. (Emphasis added.)

B. <u>The test for determining the voluntariness of the statement</u>

The recent decision of *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988), *cert. denied*, 490 U.S. 1020 (1989) describes the test for determining the voluntariness of a confession as follows:

> The test for voluntariness of a confession involves three factors. Threshold to the determination that a confession was "involuntary" for due process purposes is the requirement that the police "extorted [the confession] from the accused <u>by means of coercive activity</u>." *See United States v. Rohrbach*, 813 F.2d 142, 144 (8th Cir. 1987) (citing *Colorado v. Connelly,* 479 U.S. 157, 107, S.Ct. 515, 522, 93 L.Ed.2d 473 (1986)). Once it is established that the police activity was objectively coercive, it is necessary to examine petitioner's subjective state of mind to determine whether the "coercion" in question was sufficient to overbear the will of the accused. *Rohrbach*, 813 F.2d at 144. Finally, petitioner must prove that his will was overborne *because* of the coercive police activity in question. <u>If the police misconduct at issue was not the 'crucial motivating factor' behind petitioner's decision to confess, the confession may not be suppressed</u>. (Emphasis added.)

In the subsequent decision in *United States v. Rigsby*, 943 F.2d 631, 635, (6th cir. 1991) the court declared:

6

(1:12 CR 238)

> In determining the voluntariness of a confession, we must examine "the totality of the circumstances surrounding the confession, both the characteristics of the accused and the details of the interrogation, and determine their psychological impact on an accused's ability to resist pressures to confess." *United Stats v. Brown*, 557 F.2d 541, 546 (6th Cir. 1977). To support a determination that a confession was coerced, the evidence must establish that: (1) the police activity was objectively coercive; (2) the coercion in question was sufficient to overbear defendant's will; and (3) defendant's will was, in fact, overborne as a result of the coercive police activity. *McCall v. Dutton*, *supra.*

C.  <u>The test for establishing that a confession was involuntary</u>

This issue was recently addressed in *United States v. Ostrander*, 411 F.3d 684, 696 (6th Cir. 2005) where Chief Judge Boggs writing for the court, held in part as follows:

> Accordingly, we focus on the voluntariness of the confession. The government bears the burden of proving by a preponderance of the evidence that a confession was voluntary. *United States v. Wrice*, 954 F.2d 406, 410 (6th Cir. 1992). To establish that a confession was involuntary, we require three elements: "(i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir.1999) (citing *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir.1988)); *United States v. Johnson*, 351 F.3d 254, 260 (6th Cir.2003). <u>Factors relevant to determining whether defendant's will was overborne include age, education, intelligence, awareness of rights, length of questioning</u>, and use of physical punishments. *Mahan*, 190 F.3d at 423; *see also United States v. Doe*, 226 F.3d 672, 680 (6th Cir.2000); *United States v. Doe*, 226 F.3d 672, 680 (6th Cir.2000); *United States v. Weekley*, 130 F.3d 747, 751 (6th Cir.1997). (Emphasis added.)

D.  <u>Burden of proof to establish voluntariness and a waiver of *Miranda* rights</u>

In *Lego v. Twomey*, 404 U.S. 477 (1972), the supreme Court held with respect to state

7

(1:12 CR 238)

prosecutions that the burden of proof as to whether a confession was voluntary was the preponderance of evidence standard. Since that date, federal court have followed the same preponderance burden. *See United States v. Montgomery*, 2012 WL 3217117 at * 3 (CA 6) (citing *United States v. Johnson*, 351 F.3d 254, 260 (6th cir. 2003)).

The Supreme Court reaffirmed its holding in *Lego* and applied the same burden of proof to waiver of *Miranda* rights in *Colorado v. Connelly*: "Whenever the State bears the burden of proof in a motion to suppress a statement that the defendant claims was obtained in violation of our *Miranda* doctrine, the State need prove waiver only by a preponderance of the evidence." *Colorado v. Connelly*, 107 S.Ct. 515, 522 (1986). Federal courts apply the same burden of proof with respect to waiver of *Miranda* rights. *United States v. Adams*, 583 F.3d 457, 467 (6th Cir. 2009) ("It is the government's burden to establish a waiver by a preponderance of the evidence.").

### VII. The Totality of the Circumstances Test

Justice Blackmun, writing for the Supreme Court, in *Fare v. Michael* C., 442 U.S. 707, 724-25 (1979) described the totality of the circumstances test in the following language:

> ... that the question whether the accused waived his rights "is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case." Thus, the determination whether statements obtained during custodial interrogation are admissible against the accused is to be made upon an inquiry into the totality of the circumstances surrounding the interrogation, to ascertain whether the accused in fact knowingly and voluntarily decided to forgo his rights to remain silent and to have the assistance of counsel. *Miranda v. Arizona*, 384 U.S., at 475-477, 86 S.Ct. at 1628-1629.

(1:12 CR 238)

> This totality-of-the circumstances approach is adequate to determine whether there has been a waiver even where interrogation of juveniles is involved. We discern no persuasive reasons why any other approach is required where the question is whether a juvenile has waived his rights, as opposed to whether an adult has do so. <u>The totality approach permits – indeed, it mandates – inquiry into all the circumstances surrounding the interrogation</u>. This includes evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights. *See North Carolina v. Butler, supra.* (Emphasis added.)

Two recent decisions of the Sixth Circuit direct the district court to consider the totality of the circumstances in connection with the question of whether a confession was voluntary or involuntary. *See Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir.1994) and *United States v. Johnson*, 351 F.3d 254, 260 (6th Cir.2003).

VIII.  The Applicability of the Public Safety Exception

In 1984, in *New York v. Quarles*, 467 U.S. 649, 655, Justice Rehnquist, writing for the court, identified a public safety exception to the *Miranda* requirement in the following statement:

> We hold that on these facts there is a "public safety" exception to the requirement that Miranda warnings be given before a suspect's answers may be admitted into evidence, and that the availability of that exception does not depend upon the motivation of the individual officers involved. In a kaleidoscopic situation such as the one confronting these officers, where spontaneity rather than adherence to a police manual is necessarily the order of the day, the application of the exception which we recognize today should not be made to depend on post hoc findings at a suppression hearing concerning the subjective motivation of the arresting officer. Undoubtedly most police officers, if placed in Officer Kraft's position, would act out of a host of different, instinctive,

9

(1:12 CR 238)

>and largely unverifiable motives – their own safety, the safety of others, and perhaps as well the desire to obtain incriminating evidence from the suspect.
>
>Whatever the motivation of individual officers in such a situation, <u>we do not believe that the doctrinal underpinnings of Miranda require that it be applied in all its rigor to a situation in which police officers ask questions reasonably prompted by a concern for the public safety</u>.  (Emphasis added.)

### IX.  The Court's Ruling on the Issues with Respect the *Miranda* Warning and Waiver and the Voluntariness of Connor's Statement

In considering these issues, the Court has applied the totality test of the circumstances which include:

1. The short delay in advising the defendant of his *Miranda* rights;

2. The several assurances by FBI Agent Ruddy that the defendant would benefit from cooperating with the FBI in answering the FBI's questions;

3. The fact that the interview of the defendant began near the midnight hour at a time when the defendant was clearly suffering from having been exposed to the elements at the time of his arrest;

4. Even though the defendant signed the waiver of his *Miranda* rights on the form, the verbal instructions regarding the waiver were of marginal clarity;

5. During the interview, the defendant appeared to object to the idea that his statements could be used against him with the declaration of "Whoa, whoa, whoa;"

6. The conduct of the defendant following the Miranda warning constitutes an implied waiver of his rights set forth in the Miranda warning;

7. The defendant's interview continued after several declarations by the defendant that he was tired and wanted the interview process to be completed;

8. The defendant eventually made incriminating admissions during the four-hour interview;

(1:12 CR 238)

9. Ruddy, the FBI agent interviewing the defendant, did not engage in coercive action during the four-hour interview of the defendant;

10. Ruddy, the FBI agent, conducting the four-hour interview, expressed a public safety concern that similar potentially destructive action might be planned by the defendants or their friends in the "Occupy Movement;" and

11. Applying the teachings of *United States v. Ostrander*, *supra,* the defendant, during the suppression hearing, failed to establish that his admissions of criminal culpability during the four-hour interview were involuntary.

## X.  Conclusion

Based on the findings above described, the Court rules that the motion of the defendant to suppress his statement on the basis of a violation of *Miranda v. Arizona* and that his admissions were of an involuntary nature is DENIED.

IT IS SO ORDERED.

| | |
|---|---|
| August 27, 2012 | */s/ David D. Dowd, Jr.* |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |